D&F

# ZETLIN & DE CHIARA LLP
### Counselors at Law

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/8/12
```

May 7, 2012

*Via Email Only – Furman_NYSDChambers@nysd.uscourts.gov*

Hon. Jesse M. Furman
United States District Court
Southern District of New York
500 Pearl Street, Room 630
New York, New York 10007-1312

      Re: *Jose Moreno and Mohammed Nazim Kalil v. 194 East Second Street, LLC*
           Case No. 10 CV 7458 (RJH)

Honorable Sir:

      This firm is counsel to 194 East Second Street, LLC, the defendant in the above action. We write as requested in Your Honor's April 20, 2012 Order to provide you with a status report on this action.

### *Nature of the Case and Defenses*

      Plaintiffs allege that they worked 13 hours a day, 7 days a week for a period of ten years as a doorman and superintendent, respectively, at Defendant's apartment building at 194 East Second Street, New York, New York (the "Building"), but only received payment for 40 hours a week. In addition, plaintiff Kalil contends that the termination of his employment was a retaliatory firing for seeking payment for overtime hours allegedly worked. Plaintiffs allege that the schedule annexed to the Complaint as Exhibit C evidences that Defendant intended for them to work these hours. However, plaintiff Moreno testified that the schedule was prepared by the workers – *not* their Defendant employer – and was never shared with the Defendant or posted at the workplace. Defendant's witnesses confirmed that they did not prepare nor had they ever seen this alleged schedule.

      Defendant acquired the Building in 2001 and retained the same staff on the same terms of employment. There was never any explicit discussion of the terms of Plaintiffs' employment or their work schedules; the parties simply agreed that Plaintiffs would continue to be employed upon the same terms as they had been under the prior owner. Defendant's payroll records evidence that Plaintiffs were paid for a forty-hour work week and during the course of

Hon. Jesse M. Furman
May 7, 2012
Page 2

their employment, they did not advise either the Building's property manager or any other representatives of the Defendant that they were working overtime hours for which they were not being paid, nor did they request payment for alleged overtime. Defendant's property manager did not manage the Building on a full-time or daily basis. Rather, he visited the Building bi-weekly to deliver pay checks, which were left with Kalil or Moreno if Kalil was not present, and periodically as needed to address specific issues at the Building.

Defendant essentially left it to Kalil, the superintendent, to ensure that the Building ran smoothly, which it did until early 2010. At that time, Defendant sought to make improvements to the Building with a view toward increasing rents, including turning what was essentially unused space into a gym and installing a security camera at the Building. At the same time, Plaintiffs and other building personnel were in the process of joining a union and perceived the Defendant employer's actions to be an unwelcome response to those activities. Multiple altercations ensued between Kalil and various management employees, including a principal of the Defendant, and coupled with certain other issues, a decision was made to terminate Kalil's employment for cause. Moreno was not terminated, notwithstanding Plaintiffs' contention that Kalil's firing was in retaliation for a letter from Plaintiffs' attorney asserting a wage claim on behalf of Kalil and Moreno (Complaint, Ex. A).[1]

During his deposition, Kalil confirmed that during the time he was employed at the Building – and allegedly working there 13 hours a day, seven days a week – he was also employed at various times as a superintendent or porter at an additional three buildings of similar size and scope. During depositions of two non-party employers Kalil identified, Defendant learned that Kalil was also employed during this same time as a superintendent or porter at *another five buildings* that he failed to disclose during discovery. Kalil testified to an elaborate scheme in which he allegedly misrepresented his employment status to his other employers and claimed to be paying various family members in unreported and untraceable cash to perform some of his responsibilities. However, when deposed, Kalil's other employers understood that he was working at each of their buildings during the same daytime hours he claimed to be working at Defendant's Building.

Moreno also testified that he worked as a doorman at one other building at the same time he was employed at Defendant's Building. And while Moreno testified that he worked a night shift after leaving Defendant's Building, his other employer testified pursuant to subpoena that Moreno was assigned to and did work an afternoon shift during the same hours Moreno claimed to be working at Defendant's Building.

Neither Plaintiff has any evidence to corroborate the hours allegedly worked. Instead, they contend that the fact that Defendant did not post a work schedule at the Building means that the Court has to accept their claimed hours worked, despite the disinterested

---

[1] Kalil also filed a claim with the National Labor Relations Board in which he alleged that his firing was in retaliation for union activity.

testimony of their other employers to the contrary and the fact that for years they accepted pay checks confirming that they worked forty hours a week without objection or exception.

### *Status of Discovery*

From the outset of the case, Defendant has encountered difficulties obtaining discovery from Plaintiffs. Plaintiffs failed to timely respond to interrogatories and document demands, and when they did, the responses were not signed, contained improper objections and were otherwise deficient. Even after Defendant sought the Court's assistance, discovery came in dribs and drabs as Plaintiffs purportedly "located" new documents.[2] The discovery deadline was further extended until January 20, 2012 when Kalil testified to having numerous other employers that had not been disclosed in written discovery or document responses.[3] As discussed above, the deliberate failure to disclose relevant evidence did not stop there as during non-party depositions, numerous additional places of employment were disclosed.

Defendant deposed both Moreno, whose deposition was completed, and Kalil, whose deposition is still open. Due to Kalil's disclosure of additional employers, the parties' agreed that Kalil would be produced again for an additional two hours for the completion of his deposition. Despite the fact that Kalil was deposed on November 18, 2011, to date, Plaintiffs' counsel has refused to furnish a date for the completion of Kalil's deposition. Defendant also deposed two of Plaintiffs' other employers[4] and two current/former tenants at the Building.[5]

Plaintiffs deposed Defendant's property manager and one of its principals, each as both a fact witness and a FRCP 30(b)(6) witness. Plaintiffs waived any other depositions it noticed and did not subpoena any non-party witnesses.

All discovery was to be completed on or before January 20, 2012. Prior to that date, in a letter to Judge Holwell, Defendant advised that certain discovery remained open and requested that the open discovery be addressed during the previously scheduled February 1, 2012 conference. That conference was rescheduled by the Court until March 5, 2012, but was never held due to Judge Holwell's retirement. In addition to the completion of Kalil's deposition, a dispute also arose with respect to a non-party subpoena that was served on Kalil's wife, Nalini Kalil.[6] Mrs. Kalil has testimony that is material to the dispute at hand, because she has personal knowledge of Kalil's employment for Defendant and at the other buildings. In addition, there is a dispute about the expected application of monies paid by Defendant to Mrs. Kalil since Defendant disputes Plaintiffs' inconsistent testimony that Mrs. Kalil physically performed work

---

[2] Plaintiffs also initially refused to provide and argued against providing their tax returns, which would lead to the discovery of additional employers.

[3] Here too, counsel represented on the record that Plaintiffs would amend their written responses to accurately reflect all additional employers and potential witnesses, yet Plaintiffs failed to do so.

[4] Defendants attempted to locate and subpoena other former employers of Kalil without success.

[5] During discovery, Plaintiffs produced letters from a number of current/former tenants at the Building which they contended demonstrated the hours Plaintiffs alleged to have worked. Defendant deposed two of those tenants and subpoenaed a third tenant, whose deposition did not go forward due to a scheduling conflict.

[6] Plaintiffs' counsel declined to produce Mrs. Kalil voluntarily and insisted that we subpoena her for a deposition.

Hon. Jesse M. Furman
May 7, 2012
Page 4

at the Building. As noted in our January 26, 2012 letter to Judge Holwell (attached), Kalil deliberately interfered with our ability to serve Mrs. Kalil and to follow-up to secure her deposition. Counsel further impaired our ability to take her deposition by advising that they were going to meet with and be representing Mrs. Kalil and then objection to the subpoena (without standing to do so) and insisting that discovery was closed.

At the time of Judge Holwell's retirement, by letter dated February 14, 2012 (attached) Defendant had pending an application for an order compelling Mrs. Kalil to appear for her deposition. We ask that Your Honor entertain that application at this time.

*Motions and Appeals*

By letter dated January 6, 2012, Plaintiffs requested a conference to discuss their request for permission to file a motion for summary judgment. This was Plaintiffs' second request for permission to move for summary judgment; the first was made pre-discovery. At that time, Judge Holwell directed that such a motion be held until the completion of all discovery. As described herein, discovery has not been completed. There are no appeals pending.

*Settlement Efforts*

To date, no settlement discussions have been held. Upon the completion of the discovery outlined above, if Plaintiffs are interested, I would encourage Defendant to also agree that the matter be referred to a Magistrate Judge or private mediation service for settlement discussions.

Thank you for your consideration. We remain available to provide any additional information needed.

Respectfully submitted,

Lori Samet Schwarz

Enclosures

cc:     Craig Stuart Lanza, Esq. (*via email*)