UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSE MORENO and MOHAMED NAZIM KALIL,                    10 CIV 7458 (JMF)

                        Plaintiffs,

          -against-

194 EAST SECOND STREET, LLC,

                        Defendant.
------------------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


                              **ZETLIN & DE CHIARA LLP**
                              *Attorneys for Defendants*
                              **801 Second Avenue**
                              **New York, New York 10017**
                              **(212) 682-6800**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS .......................................................................................3

ARGUMENT ..............................................................................................................4

POINT I

PLAINTIFFS' HAVE MAILED TO MEET THEIR
BURDEN ON SUMMARY JUDGMENT.................................................................4

     A.     Summary Judgment Standard................................................................4

POINT II

PLAINTIFFS' HAVE FAILED TO ESTABLISH THEIR
ENTITLEMENT TO RELIEF UNDER THE LABOR LAW STATUTES ..................5

     A.     Federal Labor Standards Act Requirements ("FLSA")...........................5

     B.     194 Maintained Records of Wages Paid to Plaintiffs...........................5

     C.     Plaintiffs Have Failed to Submit Sufficient Evidence From Which A
           Reasonable Inference Can Be Drawn That They Worked Overtime .....................6

     D.     In the Absence of Notice, 194 Had No Reason to Believe that
           Plaintiffs Were Working More than the 40 Hours A Week For Which
           They Were Being Paid...........................................................................8

     E.     Plaintiffs Never Advised 194 That They Were Allegedly
           Working Overtime for Which they Were Not Being Compensated.....................11

     F.     There is Significant Evidence That Plaintiffs Were Employed At Other
           Buildings at the Same Time They Were Allegedly Working at the 194
           Building ...............................................................................................12

     G.     Plaintiffs Agreed to Accept a Salary That
           Included Payment for All Hours Worked...........................................14

POINT III

PLAINTIFFS' HAVE FAILED TO DEMONSTRATE AN
ENTITLEMENT TO AN ENLARGEMENT OF THE
STATUTE OF LIMITATIONS...................................................................................17

     A.     Plaintiffs Have Failed to Establish Any Willful Violation of the Statute .............17

B.  Plaintiffs Have Failed to Establish an Entitlement To An Equitable
Tolling of the Statute ........................................................................................19

POINT IV

PLAINTIFFS' ARE NOT ENTITLED AS A MATTER OF LAW TO
RECOVER ADDITIONAL MONIES FOR "SPREAD OF HOURS" .......................................21

POINT V

194 HAS REBUTTED KALIL'S WEAKLY ALLEGED *PRIMA FACIE*
SHOWING OF A RETALIATORY TERMINATION...............................................................22

CONCLUSION ........................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ................................................4

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946) ........................................................................................................5, 8

*Aslanidis v. U.S. Lines, Inc.*,
   7 F.3d 1067, 1072 (2d Cir. 1993) .........................................................................................5

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 323-24 (1986) ................................................................................................4

*Cerbone v. Int'l Ladies' Garment Workers' Union*,
   768 F.2d 45 (2d Cir. 1985). ...............................................................................................19

*Clarke v. JPMorgan Chase Bank, N.A.*,
   2010 WL 1379778 (S.D.N.Y.). ..........................................................................................18

*Daniels v. 1710 Realty LLC*,
   2011 WL 3648245 (E.D.N.Y.) ......................................................................................10, 19

*Dixon v. International Federation of Accountants*,
   416 Fed. Appx. 107, 2011 WL 1086867 (2d Cir.) ............................................................22

*Edwards v. City of New York*,
   2011 WL 3837130 (S.D.N.Y.) ...........................................................................................18

*Espinosa v. The Delgado Travel Agency, Inc.*
   2007 WL 656271 (S.D.N.Y.) .............................................................................................21

*Fischl v. Armitage*,
   128 F.3d 50, 55-56 (2d Cir.1997) .........................................................................................5

*Giles v. City of N.Y.*,
   41 F. Supp.2d 308 (S.D.N.Y. 1999) ...................................................................................15

*Gunawan v. Sake Sushi Restaurant*,
   2011 WL 3841420 (E.D.N.Y.) ...........................................................................................19

*Gustafson v. Bell Atlantic Corp.*,
   171 F. Supp.2d 311 (S.D.N.Y. 2001) ............................................................................18, 21

*Jiao v. Chen,*
  2007 WL 4944767 (S.D.N.Y.) ..................................................................15, 16

*Joza v. WW JFK LLC,*
  2010 WL 3619551 (E.D.N.Y.) .........................................................................19

*Lai v. Eastpoint International, Inc.,*
  2000 WL 1234595 (S.D.N.Y.) .........................................................................22

*Lanzzetta v. Florio's Enterprises, Inc.,*
  763 F.Supp.2d 615, 622 (S.D.N.Y. 2011) ......................................................20

*Maldonado v. La Nueva Rampa, Inc.,*
  2012 WL 1669341 (S.D.N.Y.) .........................................................................21

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,*
  475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ..............................4

*McLaughlin v. Richland Shoe Co.,*
  486 U.S. 128, 133, 108 S.Ct. 1677 (1988) .................................................17, 18

*McLean v. Garage Management Corp.,*
  2012 WL 1358739 (S.D.N.Y.) .........................................................................17

*Morrisseau v. DLA Piper,*
  532 F.Supp.2d 595 (S.D.N.Y. 2008) ...............................................................24

*Powell v. Nat'l Bd. of Med. Exam'rs,*
  364 F.3d 79, 84 (2d Cir. 2004) ..........................................................................5

*Raskin v. Wyatt Co.,*
  125 F.3d 55, 66 (2d Cir. 1997) ...........................................................................8

*Reed v. A.W. Lawrence & Co.,*
  95 F. 3d 1170 (2d Cir. 1996) ...........................................................................24

*Reich v. Southern New England Telecommunications Corp.,*
  121 F.3d 58, 66 (2d Cir. 1997) ...........................................................................5

*Upadhyay v. Sethi,*
  2012 WL 260636 (S.D.N.Y.) ...........................................................................21

*Zubair v. Entech Engineering P.C.,*
  808 F.Supp.2d 592 (S.D.N.Y. 2011) ...............................................................21

## Statutes & Rules

N.Y.C.R.R. § 142-2.4 ................................................................................................21

FLSA § 207(a)(1) ......................................................................................................5

29 C.F.R. § 516.2 ......................................................................................................5

29 C.F.R. § 516.4 ...............................................................................................19, 20

29 C.F.R. § 516.5 ...............................................................................................19, 20

29 C.F.R. § 516.6 ...............................................................................................19, 20

29 U.S.C. § 207(a) ...................................................................................................17

29 U.S.C. § 215(a)(3) ..............................................................................................22

29 U.S.C. § 216(b) ..................................................................................................22

29 U.S.C. § 255(a) ...................................................................................................17

New York Labor Law §215 ......................................................................................22

New York Labor Law §650 ......................................................................................22

New York Labor Law §§663(1) ...............................................................................17

New York Labor Law §663(3) ..................................................................................17

## PRELIMINARY STATEMENT

Plaintiffs' claims in this action are predicated on the completely incredible contention that for a period of ten years they each worked 13 hours a day, 7 days a week, Jose Moreno ("Moreno") as a doorman and Mohamed Nazim Kalil ("Kalil") as a superintendent, at a building owned by defendant 194 East Second Street LLC ("194") located at 194 East Second Street, New York, NY (the "Building"). Plaintiffs rely solely on their own affidavits, and make no attempt to demonstrate either the hours worked or the work performed, as if simply because they say so it must be true. Laboring under the mistaken belief that they are entitled to a judgment for the hours claimed simply because 194 is unable to produce a schedule, Plaintiffs' have elected to completely ignore all other evidence adduced in this case.

Counsel has attempted to paint a picture of Plaintiffs as poor unfortunate immigrants who, unaware of their legal rights, worked hard to make a good life for themselves and their families. However, it is Plaintiffs that have exploited 194's lack of hands on, day-to-day management of the Building to work in concert to cover their basic responsibilities while simultaneously working other jobs for other employers. During his deposition, Kalil spoke with pride about how he scammed at least three other employers by accepting employment as a superintendent at a total of *eight* other buildings – during the same period he allegedly was working 13 hours a day, 7 days a week for 194. To support his wage claim against 194, Kalil admitted to accepting salaries at each of these other buildings, but claimed to pay a handful of relatives a small portion of those salaries in cash to perform his responsibilities; something that surprised his other employers.

And while Moreno may not be guilty of the same widespread misconduct, he admittedly also held a second job as a part-time doorman at one of the buildings where Kalil

would have this Court believe he was masquerading as the live-in superintendent.  There is adamant testimony from the former property manager for that building that Moreno's set schedule was from noon to 3 p.m., six days a week – the identical time Moreno claimed to be toiling away at 194.  Yet both he and Moreno confirmed having met a number of times at that other building during Moreno's mid-day shift.

Conspicuously absent from Plaintiffs' motion is any corroborating evidence for the contention that they worked the number of hours now claimed in this lawsuit.[1]  Careful reading of the *only* purported support for their claims comes in the form of letters Plaintiffs requested from 194's tenants in April 2010 attesting to their "consistent service" at the Building.  Yet the letters, worded as Plaintiffs requested, do *not* confirm that *both* Plaintiffs worked 7 days a week, much less 13 hours on each of those days.

What became apparent from Plaintiffs' deposition testimony is that for many years, they worked as a team to serve the tenants at the 194 Building without having to sacrifice their other sources of income.  In fact, it was only in May 2010, when 194's representatives began to question Plaintiffs' performance that they suddenly claimed to have been working this level of overtime without compensation.  A number of altercations with Kalil in the spring and summer of 2010, in which it was documented that Kalil was verbally abusive and physically threatening led to his termination.  The last instance of subordination, occurring after counsel's August 10, 2010 wage claim letter was the final straw.

Most significantly, and contrary to Plaintiffs assertions, at no time did 194 tell Plaintiffs that they had to work 13 hours a day, 7 days a week nor did Plaintiffs ever tell 194 that they were working this alleged extensive overtime without compensation until May 2010 following an altercation with management employees.  Rather, following 194's purchase of the

---

[1] Plaintiffs do not even deduct time for lunch and other breaks, despite having testified to taking same.

2

Building, Plaintiffs and a principal of 194, Orin Wilf, generally agreed to keep Plaintiffs on at the Building doing the same thing without ever discussing exactly what that meant.  Both Plaintiffs confirmed that despite knowing that Wilf was the "owner", they never raised the overtime issue with him during *any* of their subsequent meetings, including ones at which they specifically asked Wilf for health and other benefits.

Upon consideration of the deposition testimony in this action – of Plaintiffs, representatives of 194 and non-party witnesses – this Court will be more than convinced that there are material questions of fact precluding summary judgment in Plaintiffs' favor; it too will completely doubt the veracity of the story Plaintiffs have weaved.

## STATEMENT OF FACTS

The facts supporting 194's opposition to Plaintiffs' motion are derived primarily from Plaintiffs' own deposition testimony[2] which, in certain material respects, is at odds with the affidavits submitted on this motion.  194's opposition is also supported by (a) the deposition testimony of 194's property manager, Mark S. Fishel;[3] (b) an affidavit of Mark S. Fishel, sworn to the 31st day of July, 2012 ("Fishel Aff.") supplementing that testimony; (c) the deposition testimony of a principal of 194, Orin Wilf;[4] (d) an affidavit of 194's former property manager, Michael Lerman, sworn to the 31st day of July 2012[5]; and (e) the deposition testimony of four non-party witnesses, two employers of Plaintiffs at other buildings, Adam Daniels[6] and Pamela

---

[2] The pages of Moreno's testimony cited in this Memorandum have been collectively annexed in numerical order to the Schwarz Affirmation as Exhibit C and will be referenced herein as "Moreno Dep., p. __".  The pages of Kalil's deposition testimony cited herein are collectively annexed in similar fashion as Exhibit D to the Schwarz Affirmation and will be referenced as "Kalil Dep., p. __".

[3] The pages of Fishel's testimony are collectively annexed to the Schwarz Affirmation as Exhibit E, and will be referenced as "Fishel Dep., p. __", or "Fishel 30 Dep., p. __".

[4] The pages of Wilf's testimony are collectively annexed to the Schwarz Affirmation as Exhibit __ for testimony given as a fact witness and Exhibit F, and will be referenced as "Wilf Dep., p. __".

[5] Although Lerman was identified as a potential witness in Plaintiffs' FRCP 26(A)(1) Initial Disclosures, he was not subpoenaed for a deposition nor did Plaintiffs request a last known address for him.

[6] Schwarz Affirmation as Exhibit G; "Daniels Dep."

Orlando,[7] and two tenants of 194, Stacey Wu[8] and Jessica Freeborn[9].  In order to comply with

the Court's page limitation, the facts will not be summarized at the beginning, but rather will be

referenced throughout this Memorandum in support of 194's arguments.[10]

## ARGUMENT

### POINT I

### PLAINTIFFS' HAVE MAILED TO MEET THEIR BURDEN ON SUMMARY JUDGMENT

**A.     Summary Judgment Standard**

It is well established that there must be "no genuine issue as to any material fact"

for the moving party to be entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323-24 (1986).   The movant bears the initial burden of demonstrating the absence of a

disputed issue of material fact. *Id.*   A fact is material if it "might affect the outcome of the suit

under governing law," meaning that "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986).

In considering the motion, the court's responsibility is not to resolve disputed

issues of fact but to assess whether there are any factual issues to be tried, while resolving

ambiguities and drawing reasonable inferences against the moving party. *Id.*   In determining

whether disputed issues of material fact exists, the Court must view the evidence in the light

most favorable to the non-moving party, and must draw all reasonable inferences in that non-

moving party's favor. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587,

106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  "Credibility assessments, choices between conflicting

---

[7] Schwarz Affirmation as Exhibit H; "Orlando Dep."
[8] Schwarz Affirmation as Exhibit I; "Wu Dep."
[9] Schwarz Affirmation as Exhibit J; "Freeborn Dep."
[10] 194 will also provide the Court with searchable copies of all deposition transcripts.

versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Fischl v. Armitage*, 128 F.3d 50, 55-56 (2d Cir.1997).

In raising a triable issue of fact, the non-movant carries only "a limited burden of production," by coming forward with 'specific facts showing that there is a genuine issue for trial.'" *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) (quoting *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993)). As demonstrated herein, Plaintiffs have failed to carry their burden as genuine issues of material facts exist that as a matter of law preclude summary judgment in Plaintiffs' favor.

## POINT II

### PLAINTIFFS HAVE FAILED TO ESTABLISH THEIR ENTITLEMENT TO RELIEF UNDER THE LABOR LAW STATUTES

#### A.  Federal Labor Standards Act Requirements ("FLSA")

FLSA § 207(a)(1) provides that an employee who works more than forty hours in any given week is entitled to be paid "not less" than one and one-half times the regular rate at which they are employed. In the seminal case of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), the Supreme Court confirmed that the plaintiff bears the burden of proving that he worked the hours or overtime claimed and was not properly compensated. If he is unable to do so through his employer's records, he must still produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson,* 328 U.S. at 687-88. Only then does the burden "shift[] to the employer to come forward . . . with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.*

#### B.  194 Maintained Records of Wages Paid to Plaintiffs

Plaintiffs cite to *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 66 (2d Cir. 1997) for the similar proposition that in the absence of records the employee

may "submit sufficient evidence from which violations of the Act and the amount of an award may be reasonably inferred." (Pl. Memo. p. 6)   However, while the proposition is correct, Plaintiffs' arguments on this motion are nonetheless flawed because, in the first instance, Plaintiffs incorrectly assert that 194 has "admitted" that it did "not keep records of wages and hours" demonstrating the hours worked or wages paid to Plaintiffs. (Pl. Memo, p. 6)  While 194 did not maintain a schedule or require Plaintiffs to submit time cards or other records identifying the hours they worked, it is *not* true that 194 did not maintain any wage and hour records.  194 produced copies of its year end summaries of wages and hours for both Kalil and Moreno (records that are not disputed for accuracy except for the allegation of working over 80 hours per day period) dating back to 2001 when 194 first acquired the Building. (Fishel Affidavit, Ex. D and E)   In addition, attached to the Complaint (Schwarz Affirmation, Ex. A) as Exhibit B are examples of the paystubs Plaintiffs received that clearly reflect Plaintiffs wages, hour, tax deductions, year to date earnings, etc.   Accordingly, there is no dispute as to the amount Plaintiffs were paid, what taxes were deducted or the rates actually paid as 194 has maintained the payroll records required by 29 C.F.R.§§ 516.2. 516.5, and 516.6.

**C.     Plaintiffs Have Failed to Submit Sufficient Evidence From Which A
           Reasonable Inference Can Be Drawn That They Worked Overtime**

Plaintiffs have failed to "submit sufficient evidence" of the hours allegedly worked because their bare allegation that in nine years, they never once deviated from a schedule of working 13 hours a day, 7 days a week, is not entitled to a just and reasonable inference.  The only purported corroboration offered by Plaintiffs is a handful of letters from Building tenants which do not confirm the hours allegedly worked.  (Lanza Dec. Exh. I)  While Kalil now contends that these letters were obtained to assist Plaintiffs in obtaining health insurance from

194 (Kalil Aff. ¶¶10-11[11]), he and Moreno told different stories during their depositions about how and why the letters were requested.[12]

Critically, these tenant letters do nothing to corroborate the hours claimed by Plaintiffs. First, Kalil testified that he asked the tenants to state that Plaintiffs worked seven days a week to assist them in an overtime claim against the landlord. (Kalil Dep., p. 195-197) This was confirmed by Stacey Wu, a tenant whose letter was not attached by Plaintiffs to their motion. Ms. Wu testified that Moreno asked her to write the letter and specifically asked her to say that both he and Kalil worked at the Building seven days a week. (Wu Deposition, p. 18-19; Schwarz Aff., Ex. I)

Further, while there is a common use of the phrase "consistently on duty" or the tenants attest to Plaintiffs' "consistent service", not a single letter mentions the actual number of hours plaintiffs worked on any given day or confirms that they **both** consistently worked seven days a week. In addition, some of the letters refer to both Kalil and Moreno as superintendents,[13] which is consistent with the two men dividing the overall Building responsibilities between themselves. In fact, another tenant who provided a letter and was deposed, Jessica Freeborn, confirmed that she was specifically asked to include in her letter that Plaintiffs "were on the premises all the time and that we had seen them on holidays. That they were there seven days a week." (Freeborn Dep., p. 18; Schwarz Affirmation, Exhibit J). And when asked what she meant by the use of the word "consistently", Ms. Freeborn said that "there was always one of them

---

[11]  Plaintiffs request for health insurance benefits actually occurred at a meeting with Wilf and Fishel in January 2005, not at the time these letters were generated in April 2010. However, Plaintiffs never mentioned anything about allegedly working overtime without compensation. (Kalil Dep., 118-121)

[12] For example, Moreno testified that he was nearing retirement and wanted the letters "to show my grandkids the work that I used to do" (Moreno Dep., p. 166-168). Kalil testified that he specifically asked the tenants to write letters to support his claim that he was working overtime and not getting paid. (Kalil Dep., p. 195-197)  Neither mentioned anything having to do with health benefits.

[13] Seth Funk, bates 003; Chrissie Marra and Jesse Dorigo, bates 007; Helen O'Neill, bates 008; and Lauren Gautier and Rachel Rosenstein-Sisson, bates 011.

there every single day."[14] (Freeborn Dep., p. 18)  She could not confirm that they were both there every day.  Ms. Freeborn also testified that while Kalil did most of the major repairs in the apartment, Moreno did that kind of work as well (Freeborn Dep., p. 14); she referred to both as the "main doormen" (Freeborn Dep., p. 12); and she said that if she had a problem she would leave a note at the front desk "with whoever was there." (Freeborn Dep., p. 12)

While these letters have no probative value on their face, it is clear from the deposition of just these two tenants that Plaintiffs requested reference letters with specific language; these tenants did not "spontaneously mention[ ]" Plaintiffs' hours worked. (Pl. Memo, p. 4)  If Plaintiffs intended to have tenants corroborate their hours, it was incumbent upon them to obtain sworn statements in support of their motion.  "Since the object of summary judgment is to discover whether one side has no real support for its version of the facts, . . . only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." (citations omitted)  *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).  Having failed to present this purported corroboration in admissible form, this Court should not credit these letters in any respect.  As such, Plaintiffs have failed to demonstrate "the amount and extent of their work as a matter of just and reasonable inference" as required by *Anderson v. Mt., supra.*

**D.      In the Absence of Notice, 194 Had No Reason to Believe that Plaintiffs Were Working More than the 40 Hours A Week For Which They Were Being Paid**

Based upon the size and demands of the Building, 194 would have absolutely no reason to believe that Kalil was working the hours he now claims.  Fishel testified that he had no reason to believe that Kalil would need to work more than 40 hours a week job to perform his tasks as superintendent at the Building (Fishel 30 Dep., p. 22), and in fact, Kalil's replacement requires absolutely no overtime to perform the same functions.  (Fishel Aff. ¶13)  And while

---

[14] Even if both Plaintiffs had both worked seven days a week, that does not automatically support the conclusion that either of them worked more than 40 hours in any week.

Kalil attempts to make much of the fact that he was not a live-in doorman, Kalil's replacement, who is a live-in superintendent, work 40 hours a week, with a schedule of Monday to Friday, 8 a.m. to 4 p.m. (Fishel Aff., ¶13)  The same is true for other buildings managed by Fishel – but not owned or managed by 194 – 37 Wall Street and 75 West Street, even though those buildings are much larger than the 194 Building.  (Fishel Aff. ¶¶11-12)

The absurdity of Kalil's contention that his services were required at this Building 91 hours a week is highlighted by his own testimony with respect to the time required to perform his services as the admitted "live-in" superintendent at 222 East Third Street, a building that is comparable in size to the 194 Building (8 stories, 65 apartments), even though the tasks are the same.  (Moreno Dep., p. 118-120)  While Kalil contends that he did not actually perform those services himself, he testified that his nephew, who was really the "acting super", spent no more than 5-6 hours a day, Monday through Friday, performing the required duties at 222 East Third Street.  (Kalil Dep., p. 22-23)  And while Kalil tried to say that he also threw out the garbage at 222 East Third Street on the weekends or performed some additional repairs in the evening hours (after completing his alleged 13 hour shift at the 194 Building and working at some of the other buildings), the fact remains that a standard 40-hour work week was sufficient for that comparable building.

Nor was Kalil able to substantiate the alleged need for him to work at the Building 7 days a week, much less 13 hours on each of those days.  While he tried to say that 194 dictated his work assignments by providing him with a written list of tasks to be performed and the associated schedule (Kalil Dep., p. 214), Lerman said he did no such thing.  In fact,

Lerman, with his limited experience as a property manager, was relying upon Kalil's experience to know what needed to be done. (Lerman Aff. ¶ 8)[15]

While Kalil attempted to describe what he did on a daily and weekly basis to justify the hours claimed in this action (Kalil Dep., p. 215-252), his recitation falls far short of both an adequate description of the work he performed and why it allegedly took him 91 hours a week to do it. At the end of his recitation, when it was apparent that he had not justified the hours to support his claim (and claimed to have spent most of his day throwing out garbage and stripping, buffing and waxing floors), he tried to randomly assign a large number of hours to performing standard maintenance repairs inside the apartments (opening clogged drains, fixing toilets, etc.) Yet, here too, he could not realistically approximate the number of hours spent each week on general apartment maintenance. (Kalil Dep., p. 248)

*Daniels v. 1710 Realty LLC*, 2011 WL 3648245 (E.D.N.Y.) is analogous to this case. In *Daniels*, a building superintendent claimed that he was not paid overtime under FLSA and the NYLL. However, when considering the Plaintiff's deposition testimony regarding the hours worked and the tasks actually performed (which was inapposite of the property manager's testimony), the court found that it was "not plausible, let alone reasonable, to infer that the [super] worked 10 hours per day as claimed." *Id.* The Court reasoned that the super's vague testimony concerning the tasks that were actually performed daily did not give a reasonable inference that the super worked 10 hours a day, five days a week on a regular basis or any basis at all. *Id.*

Conspicuously absent from Plaintiffs' moving papers is *any* attempt to describe the work that Kalil contends necessitated those hours. Accordingly, there is no basis to believe that

---

[15] The court should also take note of the fact that Kalil testified to performing virtually the identical tasks for Greendel (Kalil Dep., p. 66-67), even though he claimed that Greendel never provided him with a list of tasks to perform (Kalil Dep., p. 214) and just told him "this building is yours." (Kalil Dep., p. 58-59)

Kalil worked the hours claimed when his job as the Building's superintendent did not even require 40 hours per week. At a minimum, there is a question of fact for a jury to decide whether Kalil actually worked the hours claimed.

With respect to Moreno, Fishel testified that while 194 might have promoted the Building as having a 24-hour doorman, he did not think it was staffed that way. Rather, he thought that the door was being covered by the personnel at the Building however they saw fit and that the door was being locked at others times since all tenants had a key. (Fishel Dep., p. 19-20) Moreno confirmed that the door was locked when no staff was around. (Moreno Dep., p. 80)

**E.    Plaintiffs Never Advised 194 That They Were Allegedly Working Overtime for Which They Were Not Being Compensated**

In their Complaint, Plaintiffs' allege that the "evidence" that 194 required them to work some 91 hours a week was a schedule that was prepared by 194 (*see* Complaint ¶ 18, Exhibit C) and posted at the Building. (Complaint ¶ 31) However, when questioned about these allegations, Moreno expressly confirmed that the schedule was *not* prepared by 194, but rather by the employees themselves. (Moreno Dep., p. 72-73) Moreno further confirmed that the schedule was *not* posted at the Building; rather he held it at his desk for one day and took it home, never posting it at the Building. (Moreno Dep., p. 73-75)

While Moreno testified that he raised the issue of overtime wages with Fishel in 2006 (Moreno Dep., p. 49-50[16]) and again in 2008 (Moreno Dep., p. 53-54) – allegations which Fishel expressly denied (Fishel Dep., p. 37-38) – it is undisputed that Moreno made no attempt to take up the issue with Wilf (Moreno Dep., p. 52-53), and did not raise it even when meeting with

---

[16]   As discussed further in Point I(G), Moreno did not testify that he asked Fishel to be paid for his overtime; he testified that he asked Fishel if he could reduce his hours to the 40 hours a week reflected on his pay stub and claims that Fishel told him it would result in a reduction in his pay. (Moreno Dep., p. 51-52)

Wilf in January 2005 to request a benefits package. Similarly, Kalil testified that he first raised the issue of overtime with 194's first property manager, Michael Lerman ("Lerman"), shortly after 194 acquired the Building,[17]   (Kalil Dep., p. 91-96), which Lerman expressly refutes. (Lerman Aff. ¶ 6)  And while Kalil testified that Lerman told Kalil he would have to speak to "the bigger boss in the office" (Kalil Dep., p. 95-96), Kalil also testified that he never raised the issue with Wilf, not even when, in response to Kalil's request, Fishel specifically arranged a January 2005 meeting with Wilf to discuss health insurance, vacation and other benefits at the Building. (Kalil Dep., p. 118-120)  In fact, Kalil confirmed that he never had any conversation with *anybody* about payroll or his schedule following that 2005 meeting. (Kalil Dep., p. 123-124)  Accordingly, Plaintiffs received and retained their pay stubs for a period of nine years without ever advising the individual they knew to be the principal of 194 that they were allegedly working overtime hours without compensation.

**F.     There is Significant Evidence That Plaintiffs Were Employed At Other Buildings at the Same Time They Were Allegedly Working at the 194 Building**

Finally, there is considerable credible evidence that Plaintiffs were working at other buildings during the identical hours they claim to have been working at the 194 Building and for which they are now claiming overtime compensation. Despite Kalil's efforts to conceal the many other places he was working (*see* Kalil Dep., p. 37-44 [counsel's colloquy]), it was ultimately brought to light that while Kalil claims to have been toiling away at the 194 Building, he was also employed at a total of *eight* other buildings as a superintendent/porter -- 222 East Third Street, 165 Attorney Street and 201 East Second Street (which he admitted to during his first deposition session) (Kalil Dep., p. 264); and 161, 163 and 171 Attorney Street, 300 East Third Street and 379 East 10th Street (which he only admitted to because his other employers

---

[17]  Both Plaintiffs' deposition testimony directly contradict Kalil's Affidavit in which he claims that he and Jose first became aware of their right to be paid overtime when the Building became unionized in 2010. (Kalil Aff. ¶ 15)

advised 194 of his employment at those buildings during their depositions). (Kalil Dep., p. 264-266; Orlando Dep., p. 22-23; Daniels Dep., p. 36) In fact, Daniels, the property manager at 222 East Third Street, expected Kalil to be on site most of the day, even after learning he wasn't actually living there. (Daniels Dep., p. 24) And while Kalil attempted to explain how he didn't actually perform most of these responsibilities at these other buildings – claiming that it was done by one or more of his nephews – Daniels was under the impression that Kalil was performing the majority of his responsibilities at 222 East Third with only occasional, temporary help from family members (Daniels Dep., p. 28-29) and Orlando was surprised to hear that Kalil was allegedly not doing the work himself. (Orlando Dep., p. 18) Daniels also expected that Kalil was personally performing the required tasks at 330 East Third Street and 379 East 10th Street (Daniels Dep., p. 39) Certainly Kalil never told anybody he was working the alleged 13 hours a day, 7 days a week at the 194 Building at the same time he was supposed to be working full-time for them. (Daniels Dep., p. 31) In fact, he never told Daniels about any of his other employment. (Daniels Dep., p. 31)

Kalil was also responsible for coordinating outside vendors and deliveries and to present to receive them at 222 East Third Street, 330 East Third Street and 379 East 10th Street; tasks that would be required to be done during the day. (Daniels Dep., p. 33-34, 40) Finally, Daniels testified that he made regular visits to these buildings and would meet Kalil during the day when he visited 222 East Third Street. (Daniels Dep., p. 42-43) Given Kalil's employment at these other buildings and the evidence that he was present and working at those other buildings during the daytime hours, there is significant evidence that Kalil could not have been working at the 194 Building during all of the hours claimed, adding further doubt as to whether

he worked any overtime at all. Accordingly, Kalil's request for summary judgment on his wage claims must be denied.

   With respect to Moreno, Daniels testified that Moreno worked a shift at 222 East Third from noon to 3 p.m., six days a week, Monday through Saturday; the same three hours every day (Daniels Dep., p. 10-12; 15-16) or at times from 11 a.m.-3 p.m. (Daniels Dep., p. 19) When Daniels hired Moreno, he did not know Moreno was also working at the 194 Building. However, when he learned of the situation, Moreno told him he was close by and could do both jobs. Moreno confirmed to Daniels that he would work the hours he was assigned, 12-3 p.m. (Daniels Dep., p. 17-18) In the same way 194 believes Plaintiff shared responsibilities at its Building, Daniels confirmed that in addition to being a part-time doorman, Moreno would also assist Kalil with his maintenance responsibilities, both during his shift and at other times, because "they were in touch with one another". (Daniels Dep., p. 19-20) Plaintiffs raise in a footnote that Daniels' testimony is not credible because when asked what Moreno looked like, he allegedly described Kalil and not Moreno. (Pl. Memo p. 2, n. 2) However, Moreno testified that (a) "Adam" was his "boss" at 222 East Third, but he could not remember his last name, (b) Adam frequently visited 222 East Third and (c) Moreno met Adam many times at the building. (Moreno Dep., p. 132) Accordingly, the fact that Daniels might have confused Moreno and Kalil when he was describing Moreno does not negate his other detailed testimony. Let Daniels testify at the trial and identify for the Court which Plaintiff he was discussing.

## G. Plaintiffs Agreed to Accept a Salary That Included Payment for All Hours Worked

   An employer and non-exempt employee can have an agreement for a fixed weekly pay for working more than 40 hours a week that complies with FLSA if there is an explicit understanding between the parties that the employee is being paid for regular and

overtime work. *Giles v. City of N.Y.*, 41 F. Supp.2d 308 (S.D.N.Y. 1999) There is a rebuttable assumption that a salary only covers the first 40 hours of work unless the employer and employee intend and understand the weekly salary is to include overtime hours at the premium rate. *Id.* at 317. The employer can rebut the presumption with evidence of an agreement that the employee's weekly pay covered a different number of hours. *Id.* If the employer and employee do not have a written instrument setting forth the terms of their arrangement, the Court will infer the terms based upon the parties' course of conduct, testimony, and evidence in the record. *Jiao v. Chen,* 2007 WL 4944767 (S.D.N.Y.).[18]

Similar to the admissions by the plaintiff in *Jiao,* if Moreno's sworn testimony is to be credited, he has confirmed his understanding that his bi-weekly check was a "salary" that included payment for all hours he allegedly worked, both straight time and overtime. According to Moreno, prior to 194's acquisition of the Building, he was working the same number of hours for Greendel as he now alleges, and received a single check that included payment for all of his hours, including his overtime hours. (Moreno Dep., p. 157-159) Other than when he received raises, Moreno received the same check from Greendel every time. (Moreno Dep., p. 157-159) According to Moreno that same practice continued and he received roughly the same check after 194 acquired the Building. (Moreno Dep., p. 69-70).

According to Moreno, he accepted that bi-weekly payroll check without objection until 2006, when he allegedly complained to Fishel that he wanted to cut back his hours to the 40 hours a week reflected on his pay stub – ***not*** that he wanted to be paid more for the hours he

---

[18] In *Jiao,* the Court found that based upon employee's admission (an admission against self interest), he agreed to be paid $400 per week for straight time <u>and</u> overtime (162.5 hours per week). The Court held against the employer and awarded the plaintiff damages, even though it found that the parties agreed to a weekly payment that included overtime, but only because the employee's hourly rate was well below minimum wage. That is not the case here.

was allegedly working. (Moreno Dep., p. 49-50)[19]  According to Moreno, when he was told that if he reduced his hours, he would have to reduce his salary, he claims to have dropped the issue. (Moreno Dep., p. 51-52).  Moreno testified that he never took the issue up with Wilf (Moreno Dep., 52-53).

Based upon Moreno's testimony, if it is to be believed, Moreno always knew that he was being paid a "salary" that included payment for both his straight time and overtime hours. Having agreed to such an arrangement, and having accepted his salary as payment for all hours worked for more than nine years, he cannot now claim entitlement to additional overtime wages. And unlike the plaintiff in *Jiao*, Moreno was receiving more than minimum wage, for **both** straight time and overtime, even assuming *arguendo* that he worked 51 hours of overtime per week as he claims (and is disputed by 194).[20]

Wilf testified that Greendel represented that Plaintiffs were salaried employees and had been paid that way by Greendel.  (Wilf Dep., p. 14-16)  He confirmed that Plaintiffs were paid a salary and that payroll records for salaried employees are standardly set up to reflect 40 hours a week.  (Wilf Dep., p. 21)  Therefore, based upon Moreno's own admissions, there is at least a question of fact as to whether 194 fully complied with FLSA by paying Moreno for all hours allegedly worked pursuant to this understanding, sufficient to defeat his motion for summary judgment.

---

[19] While Fishel denies the conversation took place (Fishel Dep., p. 37-38), **solely** for purposes of this argument on this motion, Moreno's sworn statement will be accepted as true.

[20] Moreno's wages from 2006 through 2010 (Fishel Aff., Ex. E) were $914.69 gross per week. In 2006 minimum wage was $5.15 per hour (40 hours per week, equals a gross $206), and in 2010 minimum wage was $7.25 per hour (40 hours per week equals gross $290). Therefore, Moreno was being paid wages higher than minimum wage for straight time.  So assuming *arguendo*, that Moreno worked 51 hours of overtime at minimum wage rates in 2006 Moreno would be entitled to overtime at $7.73 per hour for $394.23, which equals, with straight time, $600.23 per week.  This leaves the amounts of $314.46 per week above the 2006 minimum wage requirements for Moreno. Similarly, at the 2010 minimum wage rate of $7.25 per hour, Moreno would be entitled to 40 hours of straight time at $7.25 for $290 and 51 hours of overtime at $10.88 per hour for $554.88, which equals with straight time, $844.88 per week, leaving $69.81 in excess over minimum wage for Moreno.

Thus, Plaintiffs have failed to meet even their initial burden to establish the amount and extent of the hours they claim to have worked. Further, summary judgment should be denied in light of the following: 194's payroll record exist; 194 had no reason to believe that Plaintiffs were working overtime; Plaintiffs never notified 194 they were working overtime; and the existence of serious credibility questions about the Plaintiffs' testimony, along with non-party testimony directly disputing the hours allegedly worked. Accordingly, an issue of fact exists that, as a matter of law, precludes summary judgment in Plaintiffs' favor.

## POINT III

### PLAINTIFFS HAVE FAILED TO DEMONSTRATE AN ENTITLEMENT TO AN ENLARGEMENT OF THE STATUTE OF LIMITATIONS

**A.**     **Plaintiffs Have Failed to Establish Any Willful Violation of the Statute[21]**

Pursuant to 29 U.S.C. §255(a), the applicable statute of limitations for a FLSA claim is two years, unless plaintiff can prove a "willful" violation, and then the applicable statute of limitations is three years. Similarly, under the New York Labor Law §663(3), the applicable statute of limitations is six years. Conduct that is deemed "willful" under FLSA is substantially the same under the NYLL. *McLean v. Garage Management Corp.*, 2012 WL 1358739 (S.D.N.Y.)

To find a willful violation under FLSA, the Supreme Court has espoused that an employer's violation is willful if it "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677 (1988). Moreover, a "reckless disregard" of FLSA requires actual knowledge of

---

[21] Plaintiffs' arguments are addressed almost entirely to their claims under FLSA. Since FLSA and NYLL set forth almost the identical standard for analyzing overtime compensation for employees, for brevity we too only analyze the FLSA statues for the Court (See, 29 U.S.C. §207, and NY Lab. Law §§ 663(1)).

a legal requirement on the employer, and deliberate disregard of the risk by the employer that it is in violation. *Clarke v. JPMorgan Chase Bank, N.A.*, 2010 WL 1379778 (S.D.N.Y.). Moreover, a willful violation of FLSA by the employer requires more than mere negligence. *Id.* An employer also does not violate FLSA even if it acted "unreasonable, but not recklessly, in determining its legal obligation" *McLaughlin,* 486 U.S. at 135 n. 13. It is the plaintiff's burden to show a willful violation of FLSA. *Edwards v. City of New York*, 2011 WL 3837130 (S.D.N.Y.).

Here, Plaintiffs have failed to meet their burden to show that 194's purported violation of FLSA (or NYLL) was willful. In *Edwards, supra*, plaintiffs, correction officers, sought additional overtime pay from the City of New York and claimed defendant's violation was willful. However, the court found the two-year statute of limitations applied as plaintiffs relied solely on the conclusory allegations in their complaint (failure to post wage and overtime regulations) and failed to identify any evidence that defendant had any knowledge or acted with reckless disregard for its FLSA obligations. *See also, Gustafson v. Bell Atlantic Corp.*, 171 F. Supp.2d 311 (S.D.N.Y. 2001) (Plaintiff claimed he was purposely misclassified by defendant to avoid paying him overtime. The Court found that the plaintiff failed to provide sufficient evidence to carry his burden of proving willfulness or reckless violation of FLSA, as plaintiff's belief was based on speculation and failed to provide any credible evidence to support his allegation).

As in *Clarke* and *Gustafson*, Plaintiffs fail to meet their obligation to substantiate their allegation that any alleged violation of FLSA was willful. Specifically, Plaintiff's argument for a willful violation is based purely on incorrect assertions that 194 managed other unionized buildings different (Fishel Aff. ¶¶ 1, 11-13). In fact, Plaintiffs own actions prevented 194 from

having actual or constructive knowledge that Plaintiffs were allegedly working overtime. Therefore, 194 cannot "be said to have suffered or permitted the employee to work in violation of the FLSA's overtime provisions." *Joza v. WW JFK LLC*, 2010 WL 3619551 (E.D.N.Y.) (plaintiff sought overtime pay, but never informed the employer she was working overtime, resulting in a judgment for the defendant); See also, *Daniels, supra*.

Based upon the lack of evidence as to willfulness the question of the applicable statute of limitations must await a trial of this action. *Gunawan v. Sake Sushi Restaurant*, 2011 WL 3841420 (E.D.N.Y.) (Summary judgment was inappropriate where despite plaintiff making a prima facie showing of wages and hours worked based upon recollection, defendant, through the declaration of an employee, raised an issue as to plaintiff's credibility. Thus, the issue of wages and hours is a credibility issue that is inappropriate for resolution on summary judgment).

**B.      Plaintiffs Have Failed to Establish an Entitlement
         To An Equitable Tolling of the Statute**

Plaintiffs argue that the FLSA statute of limitations should be tolled to enable them to recover ten years of overtime wages, due solely to 194's purported failure to post wage signage pursuant to 29 C.F.R. §516.4. (Pl. Memo Pt. II). However, the equitable tolling doctrine is an extraordinary measure that is only applicable in rare and exceptional circumstances. *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45 (2d Cir. 1985). Equitable tolling is normally applied in class action settings to avoid inequitable circumstances, where there is a showing of fraud, or when a defendant's affirmative conduct concealed from plaintiffs a cause of action. *Id*. The relevant inquiry is "whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action, and despite all due diligence . . . was unable to obtain vital information bearing on the existence of his claim." *Lanzzetta v. Florio's Enterprises, Inc.*, 763 F.Supp.2d 615, 622 (S.D.N.Y. 2011). Here, it is undisputed that Plaintiffs'

claims were timely commenced. Further, Plaintiffs' contention that they were unaware of their legal rights until advised of same by the union in 2010 (Kalil Aff. ¶ 15) is an egregious and blatant misrepresentation to this Court belied by their own deposition testimony.

Plaintiffs, based upon their respective deposition testimony, were fully aware of their rights to be compensated for any hours that they worked over 40 hours in a given week.[22] Specifically, Kalil testified that he was being paid separately for his straight time and overtime hours by the Building's prior owner. (Kalil Dep., p. 63-66) He also contends that he raised the overtime issue with the Building's first property manager, Michael Lerman, as early as July 2001.[23] (Kalil Dep., p. 96-97) Moreno testified that he first addressed the issue of hours with Fishel in 2006 (Moreno Dep., p. 49-50) and again in 2008[24] (Moreno Dep., p. 53-54) Finally, both Plaintiffs acknowledged simultaneously holding jobs at other buildings, doing similar work, dealing with other people in similar jobs, all with the opportunity to discuss wage issues with other employees. As such, Plaintiffs clearly had other avenues of learning of possible claims for overtime compensation if they were not already aware.

Plaintiffs do not allege that 194 took any affirmative action to conceal or prevent them from learning of any possible wage claims or from commencing an action. And despite Plaintiffs' argument to the contrary, an employer's failure to post a sign regarding wages pursuant to 29 C.F.R. §516.4 is not by itself justification to apply equitable tolling when, as is the case here, Plaintiffs were fully aware of their potential claims. *Id.; see also, Maldonado v. La Nueva Rampa, Inc.*, 2012 WL 1669341 (S.D.N.Y.)(equitable tolling not applicable for failure to

---

[22] While elsewhere in its opposition 194 disputes the veracity of Plaintiffs' deposition testimony that they reported alleged overtime to 194's property managers, for purposes of this issue *only*, 194 will cite to that same testimony to confirm Plaintiffs' purported knowledge of their legal rights dating back to 2001.

[23] Again, while Lerman denies that any such conversation ever took place (Lerman Aff. ¶6), for purposes of this argument *only*, the Court must accept Kalil's statement as true.

[24] Once again, Fishel denies that the issue was raised but Moreno must be held to that sworn testimony.

post notice of legal requirements under FLSA and NYLL); *Upadhyay v. Sethi*, 2012 WL 260636 (S.D.N.Y.) (failure to post notice is not enough for equitable tolling; plaintiff must show that they had no other avenues of receiving notice).  Since both Plaintiffs testified to being aware of their right to be paid overtime wages (even if not specifically aware of the applicable statutes), there is no basis for applying the doctrine of equitable tolling to the facts of this case. *Gustafson v. Bell Atlantic Corp.*, 171 F. Supp.2d 311 (S.D.N.Y. 2001).

## POINT IV

### PLAINTIFFS ARE NOT ENTITLED AS A MATTER OF LAW TO RECOVER ADDITIONAL MONIES FOR "SPREAD OF HOURS"

Plaintiffs' Second Claim for Relief includes a claim for "spread of hours" pay (Complaint ¶¶ 19-20, 36) pursuant to §142-2.4 of the New York's Official Compilation of Codes, Rules and Regulations. Under this regulation an employee who works more than ten hours in a day is entitled to be paid one hour's pay at the basic minimum wage required, known as "spread of hours".  However, it is now well established law in the Southern District that if an employee is paid a regular hourly wage that is in excess of the applicable minimum wage, as is the case with both Plaintiffs, the employee is not entitled to a spread of hours payment. See, *Zubair v. Entech Engineering P.C.*, 808 F.Supp.2d 592 (S.D.N.Y. 2011) (spread of hours claim only applicable to employees being paid minimum wage); and *Espinosa v. The Delgado Travel Agency, Inc.* 2007 WL 656271 (S.D.N.Y.)(spread of hours pay is not applicable when employee is paid above minimum wage). There is no dispute that Plaintiffs were paid well in excess of the minimum wage during the entire term of their respective employment by 194. (*see* Plaintiffs' payroll summaries, Fishel Aff., Ex. D and E)  Presumably Plaintiffs have abandoned their claim to entitlement to a "spread of hours" as they fail to espouse any argument at all in their memorandum of law.  The only mention of its spread of hours claim in its Motion is in a footnote

stating "[i]n addition, Defendant's failure to pay Plaintiffs' overtime pay and spread of hours pay violations New York State Labor Law § 650 et seq. and supporting regulations." (See, Pl. Memo, pg. 5, n. 3). Accordingly, as a matter of law, Plaintiffs are not entitled to summary judgment on this measure of damages.

## POINT V

### 194 HAS REBUTTED KALIL'S WEAKLY ALLEGED *PRIMA FACIE* SHOWING OF A RETALIATORY TERMINATION

Kalil alleges two causes of action for retaliatory termination under of 29 U.S.C. §§ 215 (a)(3), 216(b) and NYLL § 215. Both FLSA and NYLL prohibit the discharging or discriminating against an employee this files a complaint or institutes a proceeding. A claim for retaliatory termination under both FLSA and NYLL are substantially the same and are analyzed the same. *Lai v. Eastpoint International, Inc.*, 2000 WL 1234595 (S.D.N.Y.).

In order to establish a *prima facie* case of retaliation on summary judgment, the plaintiff must establish his (1) participation in a protected activity known by the defendant; (2) that was disadvantaged by an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse employment action. *Id.* "Even if a plaintiff sets forth a *prima facie* case, however, this establishes only a rebuttable presumption of retaliation, and where the defendant identifies a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts back to the plaintiff to show that the defendant's articulated reason is a pretext for retaliation. [Citations omitted]." *Dixon v. International Federation of Accountants*, 416 Fed. Appx. 107, 2011 WL 1086867 (2d Cir.)

It is astonishing that Kalil would disingenuously argue to this Court that the only possible basis for his termination was counsel's August 10, 2010 letter asserting potential FLSA and New York labor law claims. Starting in May 2010 and continuing throughout the summer,

Kalil had a number of altercations with representatives of 194, some of which escalated to the point where 194's representatives feared physical harm from Kalil.  (Wilf Dep., p. 7-12; Fishel Aff., Ex. A and B).

While each participant will spin the incidents differently, they started when, in the spring of 2010, 194 decided to renovate the public spaces, including converting a basement area to a gym and renovating the halls and lobby.  The lobby renovation included the installation of a security camera in the lobby.  Plaintiffs were also asked to remove a television from the lobby desk  (Fishel Aff. ¶7)

194 was so troubled by Kalil's erratic behavior that it documented these incidents. *See* May 4, 2010 Memo to File, Fishel Aff., Ex. A.  Andrew Till described how, after being reprimanded about leaving the Building unattended, Kalil "got very defensive and acted aggressively toward me by approaching me and invading my personal space in a violent manner. Orin Wilf stepped in from of me to stop any chance of physical violence on my person as this was a real threat from Nizam."

Another incident on July 9, 2010 was documented by Dan Landsman, at which Kalil once again refused to participate in a meeting with Fishel and Moreno and, without provocation, started shouting at Landsman and approached him menacingly. (Fishel Aff., Ex. B) Landsman was specifically concerned about Kalil's conduct upon becoming angry noting: "Exhibiting such behavior (apparent loss of control) when a tenant will annoy or upset him, (an inevitable event), is a matter of great concern."   Wilf testified that there were a number of incidents throughout the summer that led him to terminate Kalil. (Wilf Dep., p. 27)

In New York, in the absence of an employment agreement, an employer can terminate an employee for any reason (good, bad reason, or no reason at all), as long as the

reason is not based upon retaliation for an employee's protected activity.  *Morrisseau v. DLA Piper*, 532 F.Supp.2d 595 (S.D.N.Y. 2008) (defendant granted summary judgment dismissing retaliatory termination claim where the defendant law firm dismissed the plaintiff/associate for insubordinate behavior, finding there was not admissible evidence from which a jury could find that racial discrimination played a role in the termination).[25]

   Kalil's entire retaliation claim is premised upon the close proximity between the notice of wage claims (August 10, 2010) and his actual termination (August 25, 2010) for which he cites *Reed v. A.W. Lawrence & Co.*, 95 F. 3d 1170 (2d Cir. 1996).  However, Kalil offers no explanation for why, if 194 was motivated solely by a desire to retaliate for threatened wage claims, only Kalil was terminated and ***not*** Moreno.  That is because 194 had substantial grounds for the termination.  Kalil also failed to advise this Court that there was ***yet another*** instance of insubordination following counsel's letter.  Despite having been directed a number of times to remove the television from the lobby before actually doing so, in yet another act of defiance, Kalil was witnessed watching the television in the concierge area on August 11, 2010, in complete disregard to the Defendant's directive to remove the television, for which Kalil received a written notice on August 17, 2010. (Fishel Aff., Ex. C[26])  It was clear to Wilf, the ultimate decision maker, that Kalil intended to continue to challenge 194's authority and that he could no longer be trusted. (Wilf Dep., p. 6-7)    As documented by Till, Landsman and others, Kalil's erratic behavior posed a potential threat to the tenants of the Building since it was not

---

[25] Similarly, this Court should exercise its authority under Fed. R. Civ. P. 56(f) and grant summary judgment in 194's favor dismissing the retaliation claim for the same reason.

[26] Plaintiffs' counsel did not even ask Wilf if he was aware of the existence of counsel's letter at the time he decided to terminate Kalil. He also did not ask Wilf if there had been any further altercations in August between the date of the letter and the termination. Counsel's only query was whether there was an episode with Kalil "in the second week of July", to which Wilf responded that he could not remember. Wilf further testified that he could not specifically remember when the last episode occurred, although there were many episodes. (Wilf Dep., p. 27) Plaintiffs' counsel did not show Wilf the August 17, 2010 letter to see if it refreshed his recollection nor did counsel introduce it during Fishel's deposition or question him about it

clear the lengths to which Kalil would go to defy 194. (Wilf Dep., p. 6-7)  Accordingly, Wilf

made the decision to terminate Kalil following that final instance of insubordination and Fishel

carried out the directive on August 25, 2010. (Fishel Dep., p. 46-47)

## CONCLUSION

As described herein, Plaintiffs have failed to even make a *prima facie* showing of

the overtime allegedly worked, much less having proved it as a matter of law.  Plaintiffs'

allegations are simply not credible, and are refuted by substantial evidence.  Accordingly, 194

cannot be held responsible for having failed to pay for overtime hours that they had no reason to

believe Plaintiffs were performing and which Plaintiffs did not advise were being performed.

Further, the testimony of Plaintiffs' other employers that they worked during the same hours that

Plaintiffs allege they were working for 194 raises a material question of fact about whether

Plaintiffs were working any overtime at all, much less how much.  Accordingly, this Court must

deny Plaintiffs' motion in its entirety and leave the credibility of the witnesses and their

competing contention to the trier of fact.


Dated:          New York, New York
                July 31, 2012

                              Respectfully Submitted,

                              **ZETLIN & DE CHIARA LLP**

                              By: _____
                                  Lori Samet Schwarz, Esq.
                                  *Attorneys for Defendants*
                                  801 Second Avenue
                                  New York, New York  10017
                                  (212) 682-6800

25